# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

|  |  |
|---|---|
| THE ESTATE OF JUANITA AMELIA JACKSON, by and through CATHY JACKSON-PLATTS, f/k/a CATHERINE WHATLEY, Personal Representative, | ) ) ) ) ) |
|  | ) Case No. 8:13-CV-1133-T- |
| Plaintiff, | ) 33MAP |
| v. | ) |
|  | ) |
| MICHAEL SANDNES, AS COURT-APPOINTED RECEIVER FOR TRANS HEALTHCARE, INC.; ALAN M. GROCHAL, AS COURT-APPOINTED RECEIVER FOR TRANS HEALTHCARE, INC.; TYDINGS & ROSENBERG, LLP; GENERAL ELECTRIC CAPITAL CORPORATION; GTCR GOLDER RAUNER, LLC; GTCR FUND VI, L.P.; GTCR PARTNERS VI, L.P.; VENTAS REALTY, LIMITED PARTNERSHIP; and VENTAS, INC, | ) ) Honorable ) Virginia M. Hernandez Covington ) ) ) ) ) Dispositive Motion ) ) ) ) ) ) |
|  | ) |
| Defendants. | ) ) ) ) ) |

## DEFENDANTS GTCR FUND VI, L.P., GTCR PARTNERS VI, L.P., AND GTCR GOLDER RAUNER, LLC'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 4

    A.    Pre-Receivership Alleged Fraudulent Transfers. ................................................... 4

    B.    Maryland Receivership Proceedings. ..................................................................... 5

    C.    THI And THMI's Defaults And Plaintiff's Collection Efforts. .............................. 7

    D.    The Receiver And THI's Litigation Activities........................................................ 8

LEGAL STANDARD ......................................................................................................... 11

ARGUMENT ...................................................................................................................... 11

I.    Count I Should Be Dismissed Because Plaintiff Fails To State A Claim
Under Section 1983. ................................................................................................. 11

    A.    Plaintiff Fails To Allege Actions Occurring "Under Color Of State
Law." .................................................................................................................... 11

        1.    Plaintiff Does Not Allege Any Pre-January 2009 Acts
Involving A State Actor. ............................................................................ 12

        2.    Plaintiff Cannot Rely On Collateral Attacks On State Court
Orders Or Immunized Litigation Activities To State A Claim
Based On Receivership-Related Activities. ............................................... 13

        3.    Plaintiff Fails To Allege That The GTCR Defendants Acted
Under Color of State Law. ......................................................................... 17

    B.    Plaintiff Fails To Allege She Was Deprived Of Due Process of Law. ................. 19

II.    Count II Should Be Dismissed Because Plaintiff Fails To Allege Essential
Elements Of A Civil Conspiracy Claim. ................................................................. 21

CONCLUSION ................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*Adams v. Bainbridge-Decatur Cnty. Hosp. Auth.*,
   888 F.2d 1356 (11th Cir. 1989) ..................................................................... 13

*Am. United Life Ins. v. Martinez*,
   480 F.3d 1043 (11th Cir. 2007) ............................................................... passim

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................... 11

*Atico Int'l USA, Inc. v. LUV N' Care, Ltd.*,
   No. 09-60397-CIV, 2009 WL 2589148 (S.D. Fla. Aug. 19, 2009)........................ 16, 18

*Autonation, Inc. v. O'Brien*,
   347 F. Supp. 2d 1299 (S.D. Fla. 2004) ............................................................. 5

*Bd. of Regents v. Roth*,
   408 U.S. 564 (1972)...................................................................................... 13

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................... 11

*Blixseth v. Brown*,
   470 B.R. 562 (D. Mont. 2012)........................................................................ 16

*Burton v. Salzberg*,
   725 So. 2d 450 (Fla. 3d DCA 1999) ............................................................... 25

*Coletta v. City of North Bay Village*,
   962 F. Supp. 1486 (S.D. Fla. 1997) ....................................................... 19, 20, 21

*Court-Appt. Receiver of Lancer Offshore, Inc. v. Citco Gr., Ltd.*,
   No. 05-60055-CIV, 2008 WL 926506 (S.D. Fla. Mar. 31, 2008) .................................. 18

*Cox v. Mills*,
   465 Fed. App'x 885 (11th Cir. 2012) ............................................................. 17

*Cryder v. Oxendine*,
   24 F.3d 175 (11th Cir. 1994) ................................................................ 11, 19

**Page**

*Dadic v. Schneider*,
  722 So. 2d 921 (Fla. 4th DCA 1998) .............................................................. 25

*Danzas Taiwan, Ltd. v. Freeman*,
  868 So. 2d 537 (Fla. 3d DCA 2003) ................................................................ 22

*Davis v. Monahan*,
  832 So. 2d 708 (Fla. 2002) ............................................................................. 24

*Day v. Taylor*,
  400 F.3d 1272 (11th Cir. 2005) ...................................................................... 10

*Estate of Jackson v. Ventas Realty, Ltd.*,
  812 F. Supp. 2d 1306 (M.D. Fla. 2011) .......................................................... 18

*Freeman v. First Union National Bank*,
  865 So. 2d 1272 (Fla. 2004) ........................................................................... 23

*Gottschalk v. Gottschalk*,
  No. 10-11979, 2011 WL 2420020 (11th Cir. June 16, 2011) ................... 17, 19

*Halmos v. Bombardier Aerospace Corp.*,
  404 Fed. App'x. 376 (11th Cir. 2010) ............................................................... 5

*Harvey v. Harvey*,
  949 F.2d 1127 (11th Cir. 1992) ........................................................... 12, 17, 19

*Heck v. Humphrey*,
  512 U.S. 477 (1994) ........................................................................................ 15

*Hindman v. Healy*,
  278 Fed. App'x 893 (11th Cir. 2008) .............................................................. 15

*Holman v. Dean*,
  No. 5:13cv52/SPM/EMT, 2013 WL 1955703 (N.D. Fla. Apr. 1, 2013) ........ 17

*In re Ernie Haire Ford, Inc.*,
  459 B.R. 824 (Bankr. M.D. Fla. 2011) ........................................................... 23

*In re Sun World Broadcasters, Inc.*,
  5 B.R. 719 (Bankr. M.D. Fla. 1980) ............................................................... 15

*Jackson v. BellSouth Telecomms.*,
  372 F.3d 1250 (11th Cir. 2004) ...................................................................... 25

**Page**

*Kapral v. United States*,
    166 F.3d 565 (3d Cir. 1999) ........................................................................... 14

*Knology, Inc. v. Insight Comms. Co.*,
    393 F.3d 656 (6th Cir. 2004) .......................................................................... 16

*Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins.*,
    639 So. 2d 606 (Fla. 1994) ............................................................................. 25

*Martin v. Hogue*,
    No. 1:11-CV-228-T-33MAP, 2011 WL 2894986 (M.D. Fla. July 20, 2011) ............. 5, 20

*McBurney v. Cuccinelli*,
    780 F. Supp. 2d 439 (E.D. Va. 2011) .............................................................. 21

*McBurney v. Young*,
    667 F.3d 454 (4th Cir. 2012) .......................................................................... 21

*McGuire Oil Co. v. Mapco, Inc.*,
    958 F.2d 1552 (11th Cir. 1992) ................................................................. 16, 18

*McKinney v. Pate*,
    20 F.3d 1550 (11th Cir. 1994) ........................................................................ 19

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) ...................................................................... 10

*Mullinax v. Waters*,
    No. 8:12-CV-672-T-30TGW, 2012 WL 1121243 (M.D. Fla. Apr. 3, 2012) ................. 12

*Neumont v. Monroe Cnty.*,
    No. 9910054CIVPAINE, 2003 WL 22466212 (S.D. Fla. Sept. 3, 2003)...................... 21

*Olson v. Johnson*,
    961 So. 2d 356 (Fla. 2d DCA 2007).................................................................. 24

*Pitt v. Pine Valley Golf Club*,
    695 F. Supp. 778 (D.N.J. 1988)....................................................................... 21

*Polk Cnty. v. Dodson*,
    454 U.S. 312 (1981)....................................................................................... 11

*Ponzoli & Wassenberg, P.A. v. Zuckerman*,
    545 So. 2d 309 (Fla. 3d DCA 1989).................................................................. 25

iv

**Page**

*Posner v. Essex Ins. Co., Ltd.*,
  178 F.3d 1209 (11th Cir. 1999) ...................................................................... 21

*Rolex Watch, U.S.A., Inc. v. Rainbow Jewelry, Inc.*,
  No. 12-21437-CIV, 2012 WL 4138028 (S.D. Fla. Sept. 19, 2002)................................ 25

*Ross v. State of Ala.*,
  15 F. Supp. 2d 1173 (M.D. Ala. 1998) ........................................................... 21

*Skinner v. Switzer*,
  --- U.S. ---, 131 S. Ct. 1289 (2011).............................................................. 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)................................................................................ 5

*United States v. Casaran-Rivas*,
  311 Fed. App'x 269 (11th Cir. 2009) ............................................................ 14

*Young v. Ball*,
  835 So. 2d 385 (Fla. 2d DCA 2003) .............................................................. 24

**<u>Statutes</u>**

11 U.S.C. § 305(a)......................................................................................... 15

Fla. Stat. § 56.29.......................................................................................... 7

Fla. Stat. § 726.101 *et seq.* ............................................................................. 22

Fla. Stat. § 726.105...................................................................................... 22

Fla. Stat. § 726.110(1).................................................................................. 24

Fla. Stat. § 95.11(3)..................................................................................... 24

## INTRODUCTION

This litigation marks the latest chapter in plaintiff's baseless efforts to collect a $110 million default judgment entered on nursing-home negligence claims brought in Florida state court.  In 2004, plaintiff, the Estate of Juanita Jackson, sued 15 defendants, including alleged owners, operators, and managers of a nursing-home facility at which Ms. Jackson had briefly resided.  Plaintiff settled with all those defendants except two Maryland-based businesses against whom the $110 million default judgment was entered in July 2010: (i) Trans Healthcare, Inc. ("THI"), a company that has been in receivership in Maryland since January 2009, and (ii) Trans Health Management, Inc. ("THMI"), THI's former wholly owned subsidiary that has been defunct since at least 2007.

Defendant GTCR Fund VI, L.P. ("Fund VI") is a Chicago-based private-equity fund that invested in companies across the country.  GTCR Partners VI, L.P. ("Partners VI") is its general partner, and GTCR Golder Rauner LLC is the general partner of Partners VI.  These entities (collectively the "GTCR Defendants") had no involvement with Ms. Jackson's care or with the operation of the nursing home where she resided.  They were neither parties to, nor afforded an opportunity to defend themselves in the state-court nursing-home negligence lawsuit.  Their sole connection to the nursing home facility at issue in that lawsuit was through Fund VI's indirect investment in THI, which owned THMI, which provided management services to the facility before October 2004.  Fund VI gained nothing on its investment in THI-related businesses; to the contrary, it lost approximately $60 million when the THI businesses failed and THI filed for receivership.

Here, plaintiff couples non-viable Section 1983 claims with conclusory and baseless conspiracy allegations in a flawed attempt to recover from the GTCR Defendants plaintiff's state-court default judgments against THI and THMI.  Section 1983 is a civil rights statute that provides citizens with a remedy against state governments for violations of constitutional rights, not a vehicle to recover windfall judgments on negligence claims from private parties.  Plaintiff's claims fail for each of the following reasons:

**Count I (Section 1983)**.  Plaintiff fails to plead the essential elements of a § 1983 claim—namely, the deprivation of a constitutionally-protected property interest under color of state law.  *First*, plaintiff fails to state a claim against any state actor.  Much of the Complaint centers on alleged transactions that occurred years before the January 2009 appointment of the only alleged state actor here, the Maryland receiver ("Receiver").  The Complaint's challenges to Receivership-related conduct likewise fail, because (i) they constitute impermissible collateral attacks on Maryland state-court orders appointing the Receiver and approving the Receiver's January 2012 settlement agreement, and (ii) they concern the Receiver's filings in defense of claims asserted by the plaintiff and others represented by Wilkes & McHugh, which are absolutely privileged.  The absence of requisite state-actor involvement is fatal to plaintiff's § 1983 claims against all defendants.

*Second*, plaintiff's state-action claims against the GTCR Defendants suffer from an additional dispositive flaw.  Plaintiff has not alleged that the GTCR Defendants, who are private actors, acted under color of state law.  And plaintiff's attempts to impute the Receiver's action to the GTCR Defendants under a "conspiracy" theory should be rejected

because she fails to allege with particularity any facts showing that the GTCR Defendants reached an agreement with the Receiver to violate her constitutional rights.

*Third*, and independently, plaintiff's § 1983 claim must be dismissed because the Complaint fails to allege that plaintiff attempted to avail herself of procedures available in state court but was denied the opportunity.  To the contrary, plaintiff had notice of, and ample opportunity to participate in, the Maryland receivership proceedings, and had every opportunity to oppose the Receiver's legal filings in state and federal courts.  Plaintiff's failure to allege that she was denied the due process procedures afforded by the Maryland, Florida, and federal courts in which the Receiver purportedly acted dooms her claim.

**Count II (Civil Conspiracy)**.  Plaintiff's civil conspiracy claim, alleging that the defendants conspired to fraudulently transfer the assets of THI, is not viable, either.  *First*, Florida courts have expressly rejected the concept of a claim for conspiracy to cause fraudulent transfers.  Rather, fraudulent transfer claims may only be asserted directly, against the actual recipients of allegedly fraudulent transfers.  *Second*, plaintiff fails to plead facts showing any actionable fraudulent transfer.  The transfers alleged in the Complaint were not to the GTCR Defendants, fall far outside the limitations period, or were reviewed and approved by the Maryland court overseeing the receivership (the "Receivership Court").  *Finally*, the other conduct that plaintiff contends constitutes "overt acts" concerns litigation filings that are absolutely privileged under Florida law.

**BACKGROUND**

The Complaint's allegations can be divided into those regarding actions taken before THI entered receivership in January 2009 and those involving the Receivership. With respect to the pre-receivership period, plaintiff alleges a litany of purported fraudulent transfers by private businesses.   Plaintiff's receivership-related allegations concern the Maryland court's appointment of the Receiver for THI, the Receiver's defense against lawsuits filed by this plaintiff and other clients of her counsel, Wilkes & McHugh, and a January 2012 settlement between the Receiver, THI, and other Wilkes litigation targets, which the Maryland court approved.

    **A.**       **Pre-Receivership Alleged Fraudulent Transfers.**

Plaintiff contends that before the Receiver was appointed, defendants Tydings & Rosenberg, LLP, General Electric Capital Corporation ("GECC"), Ventas Realty, L.P. and Ventas, Inc. (collectively, "Ventas"), and the GTCR Defendants "conspired to defeat the plaintiff's claims by liquidating the assets of the former nursing home operators, concealing them in newly created entities, and leaving behind liability-ridden empty shells." (Cmplt. at p. 2)   Plaintiff avers that the pre-receivership conduct by these defendants was "fraudulent" and designed to "evade the mounting liabilities of THI and THMI and defeat their creditors."   (*Id.* at p. 2 & ¶¶ 88, 144)   These alleged transfers included:

- THI's payment of penalties and default interest fees to GECC and Ventas after THI defaulted on its loan agreements (*id.* ¶¶ 49, 54-60);

- THI's sale of its stock in THMI to a third party in March 2006 (*id.* ¶¶ 90-92, 101);

4

- The sale of THI's sister company, THI of Baltimore, Inc., to another third party in March 2006 in a transaction "linked" to the sale of THMI (*id.* ¶¶ 93-96, 101); and

- THI's sale of all but one of its remaining nursing home facilities to third parties in 2008 (*id.* ¶¶ 120-23).

Plaintiff does not allege that any of the pre-receivership transfers was made to the GTCR Defendants. (Cmplt. ¶¶ 90-127) Nor does she allege that the GTCR Defendants received any property of THI when the Receiver, acting under the supervision of the Maryland court, sold THI's last remaining nursing home facility in March 2009. (*See id.* ¶ 154; *see also* Ex. A, 4/24/09 Order Granting Motion of Receiver for Authority to Sell Northwest Facility Operating Assets Free and Clear of Liens, Claims and Encumbrances)[1]

## B.    Maryland Receivership Proceedings.

In January 2009, THI petitioned the Maryland Circuit Court for Baltimore County for appointment of a receiver of THI's assets and business operations. (Cmplt. ¶ 131) At that time, THI reported over $15 million in general unsecured claims and approximately $3.2 million in assets. (*Id.* ¶ 151) The Maryland court granted THI's petition for receivership on January 8, 2009 and appointed the Receiver to take control of the THI estate. (Cmplt. ¶ 134; *see also* Ex. B, 1/8/09 Order Appointing Receiver ("Receivership Order") ¶¶ 1-2) The Order conferred on the Receiver "full title to all the assets of the THI

---

[1] In ruling on this motion to dismiss, the court need not consider the Complaint alone, but may consider documents referenced in the Complaint and matters of which judicial notice can be taken. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("when ruling on Rule 12(b)(6) motions to dismiss" courts consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Halmos v. Bombardier Aerospace Corp.*, 404 Fed. App'x. 376, 377 (11th Cir. 2010) (same).  "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but to establish the fact of such litigation and related filings." *Autonation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1310 (S.D. Fla. 2004); *see also Martin v. Hogue*, No. 1:11-CV-228-T-33MAP, 2011 WL 2894986, at *2 (M.D. Fla. July 20, 2011) (taking judicial notice of state court dockets in related proceedings).

Entities" and "power and authority to take any and all actions necessary to preserve, protect and liquidate the assets of the THI Entities," including the power to dispose of THI's assets and manage any litigation or other disputes involving THI.  (*Id.* ¶¶ 3-4)  The Receivership Order also stayed all actions against THI that were or could have been commenced before the receivership.  (*Id.* ¶ 5)

On January 13, 2009, notice of the Receivership Order was sent to all THI creditors, ***including plaintiff***.[2]  (Ex. E, 1/9/09 Notice to Creditors by Receiver; Ex. F, Certificate of Mailing of Notice to Creditors at 12)  Plaintiff does not allege, because she cannot, that she objected to, moved to reconsider, appealed or otherwise attempted to challenge the Receivership Order in the Maryland court.

In March 2011, plaintiff's counsel, acting on behalf of another state-court plaintiff suing THI and THMI, moved to vacate the Receivership Order.  (Ex. G, 3/18/11 Claimant's Mot. to Vacate Receivership Order)  Plaintiff's counsel made essentially the same arguments to the Maryland court as plaintiff makes in her Complaint here, namely that the receivership is void because THI is not a Maryland company and had not dissolved before entering receivership.  (*Compare* Ex. H, 3/18/11 Mem. in Support of Mot. to Vacate Receivership Order at 8-12 *with* Compl. ¶¶ 140-41)  After full briefing and oral argument, the Maryland circuit court denied the motion.  (*See* Ex. I, 11/18/11 Memorandum and Order)  Plaintiff's counsel appealed, and the Maryland Court of Special Appeals dismissed

---

[2] The Receiver also sent a supplemental notice to THI's creditors, including plaintiff, on August 11, 2009. (*See* Ex. C, 8/11/09 Supplemental Notice to Creditors by Receiver; Ex. D, Certificate of Mailing of Supplemental Notice to Creditors at 37)

the appeal a few days before plaintiff filed this action.  (Ex. J, 4/8/13 Opinion at 1)

**C.   THI And THMI's Defaults And Plaintiff's Collection Efforts.**

In January and July 2009, the Receiver moved to stay the *Jackson* negligence litigation, pursuant to the stay imposed in the Receivership Order.  (Cmplt. ¶¶ 155, 157; *see also* Ex. B, Receivership Order ¶ 5)[3]  The Florida court denied those motions.  (Cmplt. ¶¶ 156, 163)  The court-appointed Receiver subsequently caused THI and THMI's counsel to withdraw and stop defending the lawsuit.  (*Id.* ¶¶ 170, 174, 176)  On July 22, 2010, following an empty-chair damages trial, plaintiff obtained a $110 million default judgment against THI and THMI.  (*Id.* ¶¶ 179-80)

Plaintiff then initiated post-judgment collection proceedings in Florida state court under Fla. Stat. § 56.29, impleading more than a dozen entities and individuals who had some connection to THI over the preceding decade.  (*Id.* ¶ 183)  The impleaded defendants included former THI lenders GECC and Ventas, the GTCR Defendants, law firms that had represented the Receiver or other impleaded defendants, and third parties that had purchased THI-related assets.  (*Id.*; *see also* Ex. K, 5/16/11 Pl.'s Mot. to Implead New Defs. in Proceedings Supplemental)  That post-judgment collection lawsuit remains pending in state court.

The *Jackson* impleader action and the instant lawsuit are just two elements of plaintiff's counsel's broader campaign to obtain, in ordinary nursing-home negligence cases, staggering default judgments against THI and THMI through empty-chair trials, and

---

[3] THI sold THMI's stock to a third party in March 2006.  (Cmplt. ¶¶ 90, 101)  THI, however, continued to provide for its own and THMI's defense in *Jackson* and other lawsuits after selling THMI's stock.

then pursue collection from anyone that had any connection to those businesses.  For instance, the Wilkes firm followed up its $110 million default judgment in *Jackson* with empty-chair default judgments of $200 million and $900 million in other Florida state-court cases,[4] and has commenced post-judgment collection actions in those lawsuits.[5] Wilkes & McHugh is also pursuing default judgments against THI and THMI in other state-court lawsuits pending in Florida and Pennsylvania,[6] and plaintiff has filed a federal action against Standard & Poor's and Credit Suisse, among others, claiming that they, too, conspired to prevent her from collecting her default judgments.[7]

### D.   The Receiver And THI's Litigation Activities.

Plaintiff's post-Receivership allegations concern the Receiver's (i) administration of the THI estate under the supervision of the Maryland court (Cmplt. ¶¶ 146-48, 152, 154), (ii) defense of THI and THMI in litigation (*id.* ¶¶ 155-62, 190, 210, 212-14, 222-23, 236-39), and (iii) settlement of claims with 16 targets of the *Jackson* post-judgment collection proceedings and parallel state-court lawsuits.

In December 2011, the Estate of Juanita Jackson and plaintiffs in Wilkes &

---

[4] *See* 7/8/11 Order, *Estate of Nunziata v. Pinellas Park Nursing Home, Inc.*, No. 05-8540CI (Cir. Ct. 6th Jud. Cir., Pinellas Cnty., Fla.); 1/11/12 Final Judgment, *Estate of Nunziata*, No. 05-8540CI (Cir. Ct. 6th Jud. Cir., Pinellas Cnty., Fla.); 3/16/11 & 5/16/11 Orders, *Estate of Webb v. Trans Healthcare, Inc.*, No. 01-06-CA-2418 (Cir. Ct. 8th Jud. Cir., Alachua Cnty., Fla.); 2/10/12 Final Judgment, *Estate of Webb*, No. 01-06-CA-2418 (Cir. Ct. 8th Jud. Cir., Alachua Cnty., Fla.).

[5] *See* 8/2/12 Pl. Mot. to Commence Supp. Proceedings & Implead Third Party, *Estate of Nunziata*, No. 05-8540CI (Cir. Ct. 6th Jud. Cir., Pinellas Cnty., Fla.); 8/3/12 Pl. Mot. to Commence Supp. Proceedings & Implead Third Party, *Estate of Webb*, No. 01-06-CA-2418 (Cir. Ct. 8th Jud. Cir., Alachua Cnty., Fla.).

[6] *See* 1/5/12 Pl. Mot. for Default Jdgmt., *Estate of Jones v. TFN Health Care Investors*, No. 06-06672 (Ct. Common Pleas, Montgomery Cnty., Pa.); 10/31/11 Order, *Estate of Townsend v. Briar Hill, Inc.*, No. 53-2009CA-1025 (Cir. Ct. 10th Jud. Cir., Polk Cnty., Fla.); 10/11/11 Order, *Estate of Sasser v. Trans Health Mgmt., Inc.*, No. 06CA-3511 (Cir. Ct. 10th Jud. Cir., Polk Cnty., Fla.).

[7] 4/3/13 Cmplt, *Estate of Jackson v. McGraw-Hill Cos..*, No. 8:13-cv-00850-SDM-MAP (M.D. Fla. 2013).

McHugh's other state-court lawsuits against THI and THMI (the "Wilkes Plaintiffs"), attempted to reach a settlement with the Receiver.  (*See* Ex. L, 12/6/11 Receiver's Mot. for Approval of Settlement Agmt. with Certain Tort Claimants Known as the "Wilkes Clients")  Under the terms of that proposed settlement, the Jackson Estate and the other Wilkes Plaintiffs would have paid the Receiver a total of $50,000, waived any rights they may have had to a distribution from the THI estate, and provided the Receiver and his counsel with a release of all pre-settlement claims against them.  (*Id.* at 7-9)  After the denial of that proposed settlement (Ex. M, 12/29/11 Hrg. Tr. at 291:5-296:13), the Estate of Jackson and the other Wilkes Plaintiffs continued to appear before the Receivership Court, filing briefs in opposition to motions by the Receiver and other interested parties and requesting hearings before the court.   (*See* Ex. N, 1/17/12 Wilkes & McHugh Claimants' Opp. to Mot. to Confirm Court's Jurisdiction & for Stay of Litigation & Request for Hearing; Ex. O, 1/17/12 Wilkes & McHugh Claimants' Opp. to Mot. Seeking Issuance of Order to Show Cause)

In response to the Wilkes Plaintiffs' attempts to buy new claims to assert against them, 16 targets of the Wilkes Plaintiffs' impleader and negligence lawsuits in Florida state court proposed to the Receiver an alternative settlement (the "Settlement Agreement").  Under their proposal, the Receiver and THI would exchange mutual releases with the settling defendants, THI would assign certain claims to the settling defendants, and certain settling defendants (not the GTCR Defendants) would make a settlement payment to the Receiver (significantly larger than Wilkes' $50,000 offer) and pay for the

Receiver and THI's defense in Wilkes-related lawsuits.  (Cmplt. ¶¶ 198, 266-67; *see also* Ex. P, 1/5/12 Settlement Agreement §§ 3.1, 3.2, 4, 9.1, 12-13, 17(a)-(b), (i))[8]

The Receivership Court held an evidentiary hearing on the Receiver's motion for approval of the Settlement Agreement and the opposition filed by one of the Wilkes Plaintiffs.  (*See* Ex. Q, 1/26/12 Order)  The Receivership Court found that the Receiver had weighed to the best of his ability the value of the Settlement Agreement to the THI estate, including the "likelihood or the unlikelihood of the success of certain claims" that might be brought against the THI estate and had acted "in the best interests" of the THI estate in entering the Settlement Agreement.  (Ex. R, 1/26/12 Hrg. Tr. at 129:7-130:9)  Accordingly, the Receivership Court approved the Settlement Agreement over the objection of the Wilkes & McHugh Plaintiff on January 26, 2012.  (Cmplt. ¶ 207; Ex. Q, 1/26/12 Order)

*        *        *

Plaintiff now attempts to invoke the jurisdiction of this Court to challenge Maryland state court rulings and state-court filings the Receiver made in defending against plaintiff's claims.  Plaintiff's claims against the GTCR Defendants fail as a matter of law.

---

[8] The Court may consider the contents of the Settlement Agreement in ruling on this motion to dismiss because the Agreement is central to plaintiff's claims (*see, e.g.*, Compl. ¶¶ 198-209, 266-70, 290(h), 291-92) and its contents are not in dispute.  *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (considering contents of a dealership contract in deciding motion to dismiss because the contract was "(1) central to the plaintiff's claim and (2) undisputed . . . mean[ing] that the authenticity of the document [was] not challenged"); *Meyer v. Greene*, 710 F.3d 1189, 1193 n.5 (11th Cir. 2013) ("[I]f [a] document's contents are alleged in a complaint and no party questions those contents, we may consider such a document in its entirety so long as it is central to the plaintiff's case." (internal quotations omitted)).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must "state[] a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A claim is "plausible" only if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In reviewing a complaint's "factual content," a court should not accept either "a legal conclusion couched as a factual allegation" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

## ARGUMENT

I.   **Count I Should Be Dismissed Because Plaintiff Fails To State A Claim Under Section 1983.**

To state a § 1983 claim alleging a denial of procedural due process, plaintiff must sufficiently plead: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process. *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994). Plaintiff's Complaint fails on each score.

A.   **Plaintiff Fails To Allege Actions Occurring "Under Color Of State Law."**

The hallmark of a § 1983 claim is conduct taken "under color of state law." *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (dismissing § 1983 claims against public defender who was not performing "under color of state law"). Plaintiff's Complaint demonstrates there is no claim against the only alleged state actor here, the Receiver. Indeed, most of plaintiff's averments concern alleged conduct occurring years *before* the

Receiver's appointment in January 2009. As to these pre-receivership acts, there is no state actor at all. Plaintiff fares no better with her allegations about January 2009 forward, which consist of impermissible collateral attacks on state-court orders and absolutely protected litigative conduct—none of which can form a basis for a claim under § 1983. And plaintiff's state-action theory as to the GTCR Defendants, who are private actors, fails for the additional reason that plaintiff has not alleged sufficient facts to impute the Receiver's actions to the GTCR Defendants under a conclusory "conspiracy" theory.

       1.      Plaintiff Does Not Allege Any Pre-January 2009 Acts Involving A State Actor.

The Receiver—the only state actor alleged here—was not appointed until January 8, 2009. (Cmplt. ¶ 134) Plaintiff's far-reaching allegations about purported conduct by the GTCR Defendants, GECC, and Ventas before January 9, 2009 cannot be the basis for a § 1983 claim because those defendants were all private actors. *Mullinax v. Waters*, No. 8:12-CV-672-T-30TGW, 2012 WL 1121243, at *1 (M.D. Fla. Apr. 3, 2012) (dismissing plaintiff's § 1983 claim as frivolous because plaintiff did not establish the "essential element" that defendants were persons acting under the color of state law); *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) ("[B]ecause we find *none* of the appellees to be state actors, all parties retain their private status; and no state actor exists with whom conspiracy is possible." (emphasis in original)).

Accordingly, none of plaintiff's allegations about pre-January 2009 conduct—

before the involvement of any "state actor"—can be the basis for a § 1983 violation.[9]  *See Am. United Life Ins. v. Martinez*, 480 F.3d 1043,1054-55 (11th Cir. 2007) ("The law does not countenance claims of accessory after the fact in civil fraud claims" and alleged fraudulent acts occurring "six years before the receivership entities even came into existence" could not be used to state a claim against the receiver).

> 2.     Plaintiff Cannot Rely On Collateral Attacks On State Court Orders
>         Or Immunized Litigation Activities To State A Claim Based On
>         Receivership-Related Activities.

Plaintiff's allegations concerning receivership-related conduct also fail.   In particular, plaintiff challenges the January 7, 2009 receivership petition, the Receiver's subsequent defense of THI and THMI against the Wilkes Plaintiffs' lawsuits, a litany of impleaded defendants' (and other entities') defenses against the Wilkes Plaintiffs' pre- and post-judgment collection proceedings, and the Settlement Agreement between the Receiver and THI, on the one hand, and 16 targets of the Wilkes Plaintiffs' lawsuits, on the other. (*See* Cmplt. ¶¶ 131-33 (petitioning for receivership); ¶ 115 (filing pleadings and answering discovery in state-court actions); ¶¶ 155-65 (moving to stay state-court litigation and to withdraw counsel); ¶¶ 166-77 & 261 (seeking the Receivership Court's authority to abandon the defense of certain state-court suits); ¶¶ 184-90 (impleaded defendants removal

---

[9] Indeed, the Court should not consider any alleged activity prior to July 2010, because that is when Plaintiff was first awarded the judgment that is the basis of her claim.  Plaintiff alleges a "constitutionally protected property" interest by virtue of "the ***final judgment***" in the underlying wrongful death action.  (Cmplt. ¶ 269) Prior to that point, her lawsuit was a mere "unilateral expectation" that cannot support a 1983 action.  *See Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972) (Property interests under the Constitution are "interests that a person **has already acquired** in specific benefits.") (emphasis added); *see also Adams v. Bainbridge-Decatur Cnty. Hosp. Auth.*, 888 F.2d 1356, 1363 (11th Cir. 1989) (Fourteenth Amendment property interest "requires more than a unilateral expectation; there must be a legitimate claim of entitlement.").

of state-court action to federal court and the Receiver's failure to complete "Fact Information Sheet");  ¶¶ 198-207, 266-70 (settling potential claims and moving for the Receivership Court's approval of the Settlement Agreement); ¶¶ 210-17 (entering appearance in litigation, seeking to set aside default judgments, filing or joining in motions, and filing action for declaratory relief);  ¶¶ 222-24, 265 (moving to convert bankruptcy proceeding to Chapter 11 case, seeking leave to defend THMI in state-court litigation, and invoking claims of attorney-client privilege); ¶¶ 231-38 (appealing order of bankruptcy court, filing motions and appellate briefs, claiming attorney-client privilege, and moving for reconsideration of bankruptcy court opinion); ¶¶ 239-44, 263-64 (filing declaratory judgment claim); ¶ 262 (joining motion for contempt))  None of these allegations can be the basis for a § 1983 claim.

*Appointment of Maryland Receiver/January 2012 Settlement Agreement*. Plaintiff's filing suit in this Court, challenging the propriety of the Receivership Court's orders, "amount[s] to an improper collateral attack" of a state court order.  *See Martinez*, 480 F.3d at 1056; *see United States v. Casaran-Rivas*, 311 Fed. App'x 269, 271 (11th Cir. 2009) ("[A] collateral attack is generally inappropriate if the possibility of further direct review remains open.") (quoting *Kapral v. United States*, 166 F.3d 565, 570 (3d Cir. 1999)).  If plaintiff had an objection to the January 2009 order appointing the Maryland Receiver or the January 26, 2012 order approving the Settlement Agreement, Maryland state courts provided the only proper forum for those objections.

In *Martinez*, the Eleventh Circuit affirmed dismissal of claims predicated on a

collateral attack of a receivership order.  The *Martinez* plaintiffs included 17 insurers who brought claims, including for conspiracy and RICO violations, against a court-appointed receiver charged with administering the assets of several viatical companies.  480 F.3d at 1048-49.  The insurers alleged that the receiver had conspired with the companies to, among other things, fraudulently procure contracts to purchase benefits of life insurance policies from terminally ill patients.  *Id.* at 1067-68.  The insurers asked for relief, including "modifications of the receivership order and an accounting."  *Id.* at 1052.  The Eleventh Circuit affirmed the dismissal of those counts, agreeing that the insurers "should have asked to intervene in the earlier receivership proceeding," and their "efforts to modify the receivership order amounted to an improper collateral attack."  *Id.* at 1056.

Importantly, this bar against collateral attacks of state-court orders applies with equal force in the context of § 1983 claims.  "[Section] 1983 should not 'expand opportunities for collateral attack.'"  *Skinner v. Switzer*, --- U.S. ---, 131 S. Ct. 1289, 1301 (2011) (citing *Heck v. Humphrey*, 512 U.S. 477, 485 (1994)); *see also Hindman v. Healy*, 278 Fed. App'x 893, 895 (11th Cir. 2008) (Even in the context of § 1983, "in the interest of finality and consistency, the Supreme Court has generally declined to expand opportunities for collateral attack.").  Thus, plaintiff's attempt to invoke the jurisdiction of this court "as a super appellate court" for her dissatisfaction with the Maryland court's orders should be rejected.  *See In re Sun World Broadcasters, Inc.*, 5 B.R. 719, 722 (Bankr. M.D. Fla. 1980) (noting that petition was a collateral attack to the state receivership action, and dismissing claims under 11 U.S.C. § 305(a), a non-appealable order, because

15

claimant's "recourse is and should be through the state court appellate procedure").

*Receiver's Conduct in Litigation.* Under the First Amendment right to petition and the related *Noerr-Pennington* doctrine, federal law provides a broad litigation immunity that extends to all acts "reasonably and normally attendant upon effective litigation." *See McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1561 (11th Cir. 1992); *Atico Int'l USA, Inc. v. LUV N' Care, Ltd.*, No. 09-60397-CIV, 2009 WL 2589148, at *3 (S.D. Fla. Aug. 19, 2009) (*Noerr-Pennington* immunity applies both to "pre-litigative and litigative activities"). The doctrine precludes liability "for actions taken when petitioning authorities to take official action, even where the petitioning activity has the intent or effect of depriving another of property interests." *Knology, Inc. v. Insight Comms. Co.*, 393 F.3d 656, 658 (6th Cir. 2004). Plaintiff has not alleged that the Receiver took any actions beyond those that are "reasonably and normally attendant upon effective litigation." Thus, plaintiff's allegations concerning the Receiver's and impleaded defendants' court filings in defending against claims of the Estate of Jackson and other Wilkes Plaintiffs (*see* Cmplt. ¶¶ 155-77, 184-90, 198-207, 210-17, 222-24, 231-44, 261, 266-70) cannot be a basis for a § 1983 claim (or any other claim).[10]

---

[10] Furthermore, as explained more fully in the Receiver's Motion to Dismiss and Memorandum of Law, plaintiff's claims against the Receiver and his counsel are barred by the *Barton* doctrine because plaintiff did not obtain leave of the receivership court before initiating this action. (*See* Defendants Alan M. Grochal & Tydings & Rosenberg LLP's Motion to Dismiss & Memorandum of Law, Dkt. 30, at 7-11) The *Barton* doctrine applies "with equal force to all . . . co-defendants [where] the nature of [plaintiff's] claims against them is based solely on their alleged conspiracy with [the Receiver]." *See Blixseth v. Brown*, 470 B.R. 562, 567 (D. Mont. 2012). Accordingly, because the *Barton* doctrine bars plaintiff's claims against the Receiver, her § 1983 claim against the GTCR Defendants, based solely on their alleged conspiracy with the Receiver, also fails. *See id.*

3.      Plaintiff Fails To Allege That The GTCR Defendants Acted Under Color of State Law.

Plaintiff's § 1983 claim against the GTCR Defendants falls at the outset because there is no claim against the only state actor, the Receiver. Plaintiff's claims as to the GTCR Defendants fail for the additional reason that she has not adequately alleged that the GTCR Defendants acted under color of state law. Although a private individual may act under color of state law for § 1983 purposes, such circumstances are "exceedingly rare." *See Holman v. Dean*, No. 5:13cv52/SPM/EMT, 2013 WL 1955703, at *3 (N.D. Fla. Apr. 1, 2013); *Harvey*, 949 F.2d at 1130. To impute state action to a private actor under a "conspiracy" theory, "plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actors and the private persons." *Harvey*, 949 F.2d at 1133; *see also Cox v. Mills*, 465 Fed. App'x 885, 887 (11th Cir. 2012) (same).

Among other things, plaintiff must allege with particularity facts showing the defendants "reached an understanding to violate [plaintiff's] constitutional rights." *Gottschalk v. Gottschalk*, No. 10-11979, 2011 WL 2420020, at *6-7 (11th Cir. June 16, 2011). Allegations that merely "string together" discrete actions without pleading facts showing "private and alleged state actors had 'reached an understanding' to violate [plaintiff's] rights" are insufficient as a matter of law. *Harvey*, 949 F.2d at 1133 (affirming dismissal of § 1983 claim); *Cox*, 465 Fed. App'x at 887 (affirming dismissal of § 1983 claim that "'merely str[u]ng together' discrete events, without showing support for a reasoned inference that the private and state actors agreed to violate the plaintiffs rights").

Here, the Complaint's post-Receivership allegations consist of string of discrete acts by the Receiver and other unspecified defendants in defending THI and THMI against plaintiff's claims.  (*See, e.g.*, Cmplt. ¶¶ 164, 188-192, 194-97, 290)  As an initial matter, plaintiff's attempt to generically amalgamate the GTCR Defendants "and others into a single appellation when alleging the conspiracy" is "a fatal problem [on] a motion to dismiss for failure to state a claim."  *See Estate of Jackson v. Ventas Realty, Ltd.*, 812 F. Supp. 2d 1306, 1314 (M.D. Fla. 2011); *see also Court-Appt. Receiver of Lancer Offshore, Inc. v. Citco Gr., Ltd.*, No. 05-60055-CIV, 2008 WL 926506, at *3 (S.D. Fla. Mar. 31, 2008) (dismissing fraudulent transfer avoidance action due to "lumping" of three defendants and lack of individualized allegations against each one).

Moreover, the only allegations of post-Receivership conduct by the GTCR Defendants concern their defense against plaintiff's post-judgment collection action against them (*see* Cmplt. ¶ 185), and their participation in the Settlement Agreement, which the Maryland court approved after a hearing and over the objection of plaintiff's counsel (*see id.* ¶¶ 198, 207).  The GTCR Defendants are immune from suit for actions taken in defending themselves against plaintiff's state-court post-judgment collection proceeding.  *See, e.g.*, *McGuire Oil*, 958 F.2d at 1561; *Atico Int'l*, 2009 WL 2589148, at *3.  And a collateral attack on a court's approval of a settlement with the Receiver cannot be the basis for a § 1983 claim in this Court.  *See Martinez*, 480 F.3d at 1056.

Moreover, the Settlement Agreement, by its plain terms, does not constitute "an understanding to violate [plaintiff's] constitutional rights."  *Gottschalk*, 2011 WL 2420020,

18

at *7.  To the contrary, the Settlement Agreement provides for mutual releases, an assignment by the Receiver of certain THI claims, and the funding of the settlement and defense of the Receiver and THI against the Wilkes Plaintiffs' claims by certain settling parties (not the GTCR Defendants).  (Ex. P, Settlement Agreement §§ 3.1-3.2, 4, 9.1, 12-13, 17(a)-(b),(i))   Given plaintiff's failure to plead *facts* showing that the GTCR Defendants reached an agreement for the Receiver to deprive plaintiff of her constitutional rights, plaintiff's claim should be dismissed with prejudice.  *See, e.g.*, *Harvey*, 949 F.2d at 1133; *Gottschalk*, 2011 WL 2420020, at *7.

B.      **Plaintiff Fails To Allege She Was Deprived Of Due Process of Law.**

Separately and independently, plaintiff's § 1983 claim should be dismissed because she has not alleged a procedural due process violation.  "Due process entitles an individual to notice and some form of hearing before state action may finally deprive him or her of a property interest."  *Cryder*, 24 F.3d at 177.  "[A] procedural violation is not complete 'unless and until the state fails to provide due process.'"  *Coletta v. City of North Bay Village*, 962 F. Supp. 1486, 1489 (S.D. Fla. 1997) (citing *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994)).   Plaintiff makes no assertion that she was deprived of the opportunity to respond to the Receiver's and THI's filings in Florida state court and federal court to which she objects.  (*See* Cmplt. ¶¶ 155-65, 171-75, 190, 213, 223, 231-33, 236-39)  Thus, those filings cannot be the basis for a § 1983 due-process claim.  *McKinney*, 20 F.3d at 1563–67 (affirming finding of no due process violation after plaintiff "failed to take advantage of any state remedies, opting instead to pursue his claim in federal court" under

19

§ 1983); *Coletta*, 962 F. Supp. at 1489 (dismissing § 1983 due process claim because plaintiff had appellate rights available to him, and in fact, availed himself of those rights with regard to some of the alleged violations).

As for the Maryland Receivership proceedings, plaintiff makes only a bare-bones assertion that "[t]he Maryland state court does not provide either adequate pre-deprivation or post-deprivation remedies."  (Cmplt. ¶ 278)  Such a conclusory allegation, devoid of supporting facts, does not pass muster under *Iqbal*.  *See Martin v. Hogue*, 2011 WL 2894986, at *2, *5 (dismissing § 1983 claim because the complaint, stripped of "mere[] legal conclusions," did not allege facts sufficient to withstand motion to dismiss).

Plaintiff's conclusory allegation is also facially incorrect.  This Court may take judicial notice of the avenues available to plaintiff in the Maryland state court.  (*See supra* n. 1)  The Receiver sent plaintiff notice of the January 8, 2009 Receivership Order (twice), and she had the opportunity to challenge it in the Maryland courts, as her counsel did (unsuccessfully) on behalf of another of the Wilkes Plaintiffs.  Likewise, plaintiff's counsel appeared before the Maryland court in December 2011, seeking approval of the proposed settlement between the Receiver and the Wilkes Plaintiffs, including the Estate of Juanita Jackson.  (Ex. M, 12/29/11 Hrg. Tr. at 2-4)  The next month, plaintiff received notice of the proposed Settlement Agreement between the state-court defendants and the Receiver.  And before the Court entered its January 26, 2012 order approving the settlement, plaintiff's counsel filed a brief objecting to the settlement and participated in a hearing on the proposed Settlement Agreement.  (Ex. S, 1/23/12 Claimant Spivery Jones'

Opp. to Receiver's Mot. for Approval of Settlement Agmt. with Certain Third Parties)

Because plaintiff does not, and cannot, plead facts showing that she "was denied any procedural means to remedy the alleged violations of his property rights," her § 1983 claim must be dismissed. *See Coletta*, 962 F. Supp. at 1489; *see also Neumont v. Monroe Cnty.*, No. 9910054CIVPAINE, 2003 WL 22466212, at *3 (S.D. Fla. Sept. 3, 2003) ("Because plaintiffs had a remedy—indeed multiple remedies—for any procedural error, of which they did not avail themselves, they suffered no deprivation of due process.").[11]

## II.     Count II Should Be Dismissed Because Plaintiff Fails To Allege Essential Elements Of A Civil Conspiracy Claim.

Plaintiff also fails to state a stand-alone claim for civil conspiracy theory. To maintain a civil conspiracy claim, plaintiff must allege that "1) two or more parties 2) agree 3) to commit an unlawful act." *Martinez*, 480 F.3d at 1067. The "gist of a civil conspiracy is not the conspiracy itself but the civil wrong which is done through the conspiracy which results in injury to the Plaintiff." *Id.* (quotations and citations omitted). If the underlying wrong is not actionable, the claim for civil conspiracy cannot stand. *Id.*; *see also Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1217 (11th Cir. 1999).

---

[11] Plaintiff also vaguely accuses the defendants (as an undifferentiated group) of violating the Equal Protection and Privilege and Immunities clauses by treating her differently than "creditors of other states." (Cmplt. ¶ 260) Again, plaintiff alleges no facts to support her conclusory assertion. For this reason alone, her Equal Protection and Privileges and Immunities claims cannot survive. *See Ross v. State of Ala.*, 15 F. Supp. 2d 1173, 1188 (M.D. Ala. 1998) (dismissing equal-protection claim because complaint did not allege facts supporting assertion of discrimination); *Pitt v. Pine Valley Golf Club*, 695 F. Supp. 778, 783-84 (D.N.J. 1988) (dismissing privileges-and-immunities claim where plaintiff failed to plead facts showing state discriminated between residents and non-residents). And the Privileges-and-Immunities claim fails for the additional and independent reason that that Constitutional provision applies only to a narrow band of specifically defined "fundamental rights" "including the rights to: (1) practice a trade or profession; (2) access courts; (3) transfer property; and (4) obtain medical services." *McBurney v. Young*, 667 F.3d 454, 463 (4th Cir. 2012) (quoting *McBurney v. Cuccinelli*, 780 F. Supp. 2d 439, 447 (E.D. Va. 2011). Plaintiff has identified no right implicated by the Privileges-and-Immunities clause.

Plaintiff's conspiracy claim is apparently predicated on a conspiracy to fraudulently transfer the assets of THI.[12]   Borrowing language from the Florida Uniform Fraudulent Transfer Act, Fla. Stat. 726.101 *et seq.*, plaintiff asserts that the Receiver, GECC, the GTCR Defendants, Ventas, and "other co-conspirators" pledged cooperation "to delay, defraud, and defeat the Plaintiff's claims," and "to sell THI's causes of action, claims, and choses of action, property rights that belong to the Plaintiff as judgment creditor, for less than reasonably equivalent value and without due process of law." *Compare* Cmplt. at p. 3 *with* Fla. Stat. § 726.105 (transfers are fraudulent if made either "[w]ith actual intent to hinder, delay, or defraud any creditor" or "[w]ithout receiving a reasonably equivalent value in exchange").  Plaintiff's Count II rests on the same fraudulent-transfer conspiracy allegations levied in the Complaint's introduction.  *Compare* Cmplt. at p. 2 (Defendants "conspired to seize the assets of former nursing home operators, conceal them in newly created entities, and leave behind empty shells for the purpose of defrauding the creditors of THI and THMI, including the Plaintiff."); *with id.* at ¶¶ 288-289 (Defendants chose a receivership "for the specific purposes of preventing all collection efforts against THI, avoiding federal bankruptcy scrutiny for fraudulent asset transfers, and maintaining control over the conspiracy.").  This conspiracy theory fails as a matter of law.

*First*, under well-settled Florida law, "there is no cause of action . . . for conspiracy to engage in fraudulent transfers." *See Danzas Taiwan, Ltd. v. Freeman*, 868 So. 2d 537, 538 (Fla. 3d DCA 2003) (affirming dismissal of claim for [conspiracy] to cause fraudulent

---

[12] To the extent that the conspiracy in Count II is predicated, in part, on alleged violations of § 1983, the claim fails for the reasons stated in Section I, *supra*.

transfers).  In *Freeman v. First Union National Bank*, the Florida Supreme Court explained that "FUFTA was intended to codify an existing but imprecise system whereby transfers that were intended to defraud creditors could be set aside."  865 So. 2d 1272, 1276 (Fla. 2004).  There exists no "distinct cause of action" under FUFTA "against non-transferees," such as a claim for aiding and abetting a fraudulent transfer.  *Id.* at 1276-77.  Thus, as the *Danzas* court concluded, Florida law does not allow claims for conspiracy to cause fraudulent transfers.  868 So. 2d at 538; *see also In re Ernie Haire Ford, Inc.*, 459 B.R. 824, 841-42 (Bankr. M.D. Fla. 2011) (holding *Freeman* bars claims "for conspiracies to commit a fraudulent transfer").  For this reason alone, Count II must be dismissed.

*Second* and independently, plaintiff fails to identify any actionable fraudulent transfers made to the GTCR Defendants.  To the extent plaintiff is asserting that the Settlement Agreement constitutes a fraudulent transfer, her claim fails because plaintiff failed to challenge the court order approving the Receiver's settlement in the Receivership Court.  *See Martinez*, 480 F.3d at 1056 (barring efforts to modify a receivership order in another court as improper collateral attacks).  Moreover, in approving the Settlement Agreement, the Maryland court heard and rejected arguments from plaintiff's counsel that the consideration THI received in the Settlement Agreement was inadequate.  (*See* Ex. R, 1/26/12 Hrg. Tr. at 129:7-130:9; *see also supra* Section D)

The Complaint does not specify any other alleged transfers to the GTCR Defendants.  And, the allegations of purported transfers to *other* defendants are time-barred under the statute of limitations that governs fraudulent transfers and civil conspiracy.  A

fraudulent transfer claim must be brought within four years of the purported transfer, *see* Fla. Stat. § 726.110(1)—the same limitations period that governs civil conspiracy claims. Fla. Stat. § 95.11(3); *Olson v. Johnson*, 961 So. 2d 356, 359 (Fla. 2d DCA 2007). Aside from the 2012 Settlement Agreement, the latest transfer alleged in the Complaint was in March 2009. (*See* Cmplt. ¶ 154) The Complaint was not filed until April 26, 2013—more than four years later. *See Davis v. Monahan*, 832 So. 2d 708, 712 (Fla. 2002) (civil conspiracy action filed in 1997 was barred where "[t]he majority of the transactions complained of occurred from 1990 to 1992"); *Young v. Ball*, 835 So. 2d 385, 386 (Fla. 2d DCA 2003) (in conspiracy claim based on forged loan application, "the statute of limitations began to run . . . when the alleged conspirators applied for the loan and received the proceeds.").[13]

  *Third*, the only "overt acts" the defendants allegedly committed "in furtherance of their conspiracy" that are not time-barred or precluded from being collaterally attacked in this Court relate to actions taken in judicial proceedings: the filing of a petition for appointment of a receiver (Cmplt. ¶ 290(b)), seeking a stay of plaintiff's state-court action and withdrawing THI's defense counsel (*id.* ¶ 290(c)), filing motions and briefs in the receivership court and the bankruptcy court (*id.* ¶ 290(d)-(g)), and filing a lawsuit (*id.* ¶ 290(i)). These acts are absolutely privileged under Florida state law; thus they cannot satisfy the "overt act" prong of a conspiracy claim. *See Jackson v. BellSouth Telecomms.*,

---

[13] Civil conspiracy claims are not subject to any delayed discovery rule. *Davis*, 832 So. 2d at 708; *Young*, 835 So. 2d at 386 ("The *Monahan* decision now makes it clear that the delayed discovery doctrine does not apply to a cause of action for civil conspiracy.").

372 F.3d 1250, 1274 (11th Cir. 2004) (under Florida law, "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding … so long as the act has some relation to the proceeding.") (citing *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins.*, 639 So. 2d 606, 607-08 (Fla. 1994)).  Florida courts have applied this litigative immunity broadly.  *See, e.g.*, *id.* at 1275 (statements made in course of settlement negotiations); *Ponzoli & Wassenberg, P.A. v. Zuckerman*, 545 So. 2d 309, 310 (Fla. 3d DCA 1989) (motion to dismiss appeal); *Burton v. Salzberg*, 725 So. 2d 450, 451 (Fla. 3d DCA 1999) (written statements made in litigation); *Dadic v. Schneider*, 722 So. 2d 921, 923 (Fla. 4th DCA 1998) (statements made in support of attorney's motion to withdraw); *Rolex Watch, U.S.A., Inc. v. Rainbow Jewelry, Inc.*, No. 12-21437-CIV, 2012 WL 4138028, at *2 (S.D. Fla. Sept. 19, 2002) (decision to file lawsuit).  Plaintiff's failure to plead any non-protected "overt act" is an additional, independent basis for dismissal of Count II.

## CONCLUSION

For all of the foregoing reasons, the GTCR Defendants respectfully request the Court enter an order dismissing plaintiff's claims with prejudice.

Dated: June 19, 2013

Respectfully submitted,

*/s/ J. Carter Andersen*
Jeffrey W. Warren, Esq.
Florida Bar No. 150024
J. Carter Andersen, Esq.
Florida Bar No. 0143626
BUSH ROSS, P.A.
P.O. Box. 3913
Tampa, FL  33601-3913
(813) 224-9255
(813) 223-9230 - fax
jwarren@bushross.com
candersen@bushross.com

and

Gabor Balassa, Esq.
Matt Nirider, Esq.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000
(312) 862-2200 - fax
gbalassa@kirkland.com
mnirider@kirkland.com

*Co-counsel for Defendants GTCR Golder*
*Rauner LLC, GTCR Fund VI, L.P., and*
*GTCR Partners VI, L.P.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 19, 2013, the foregoing was filed electronically with the Clerk of the United States District Court for the Middle District of Florida by using the CM/ECF system.

*/s/ J. Carter Andersen*
ATTORNEY