```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                      TAMPA DIVISION
```

THE ESTATE OF JUANITA AMELIA
JACKSON, by and through CATHY
JACKSON-PLATTS, Personal
Representative,

      Plaintiff,
v.                                    Case No. 8:13-cv-1133-T-33MAP

MICHAEL SANDNES, as Court
Appointed Receiver for Trans
Healthcare, Inc.; ALAN M.
GROCHAL, as Court Appointed
Receiver for Trans Healthcare,
Inc.; TYDINGS & ROSENBERG, LLC;
GENERAL ELECTRIC CAPITAL
CORPORATION; GTCR GOLDER
RAUNER, LLC; GTCR FUND VI,
L.P.; GTCR PARTNERS VI, L.P.;
VENTAS REALTY, LIMITED
PARTNERSHIP; and VENTAS, INC.,

      Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants Alan M. Grochal and Tydings & Rosenberg LLP's Motion to Dismiss (Doc. # 30), which was filed on June 10, 2013. Although this action was initiated on April 26, 2013, Plaintiff, the Estate of Juanita Amelia Jackson, by and through Cathy Jackson-Platts, was not successful in serving Defendant Michael Sandnes with process until August 30, 2013. (Doc. # 82). In an Order dated November 14, 2013, the Court denied Sandnes's Motion to Quash Insufficient Service of

Process and accepted Sandnes's joinder in the aforementioned Motion to Dismiss. The Jackson Estate has filed a Response in Opposition to the Motion to Dismiss. (Doc. # 35).

Also before the Court is Defendants Ventas, Inc. and Ventas Realty, Limited Partnership's Motion to Stay Proceedings and/or Discovery (Doc. # 68), which was filed on September 30, 2013. Defendants Alan M. Grochal and Tydings & Rosenberg joined in the Motion to Stay. (Doc. # 71). The Jackson Estate filed a Response in Opposition to the Motion to Stay on October 23, 2013. (Doc. # 77).

As explained in more detail below, the Court grants the Motion to Dismiss based upon the application of the Barton Doctrine and denies the Motion to Stay without prejudice.

I. **Background**

A. **The $110,000,000 Judgment**

Juanita Amelia Jackson was a nursing home resident at Auburndale Oaks Healthcare Center in Polk County, Florida from August 23, 2002, through December 1, 2002, and again on March 27, 2003, until May 30, 2003. (Doc. # 1 at ¶ 5). Non-parties Trans Healthcare, Inc. ("THI") and Trans Health Management, Inc. ("THMI") operated and managed the nursing home during Jackson's residency. (Id.). Jackson suffered from abuse and neglect at the nursing home and died. (Id. at 1).

2

On July 30, 2004, the Jackson Estate filed suit against THI and THMI in the Circuit Court for Polk County, Florida for personal injuries and wrongful death resulting from abuse and neglect during Jackson's nursing home residency. (Id. at ¶ 38). "At the time the Jackson Estate filed its claim against THI and THMI, these combined, vertically integrated companies were the largest private nursing home management chain in America, with revenues of over a billion dollars." (Id. at ¶ 39). However, in February of 2006, "the stock of THMI was allegedly sold to a company with the name Fundamental Long Term Care, Inc. for the discounted sum of $100,000." (Id. at ¶ 90). As for THI, as a result of "unlawful and wrongful transfers in 2006, THI was left with only a small group of unprofitable subsidiaries and property, which were gradually sold off." (Id. at ¶ 114).

On January 8, 2009, a Maryland state court appointed Michael Sandnes as Receiver of THI and authorized Sandnes to employ Tydings & Rosenberg as counsel for the Receiver. (Id. at ¶¶ 134-137). Thereafter, on July 27, 2010, Alan Grochal, Esq. was appointed as a substitute Receiver for THI. (Id. at ¶ 138).[1] The Receiver directed counsel for THI and THMI to

---

[1] In the Complaint, the Jackson Estate refers to both Sandnes and Grochal as "the Receiver." The Court will do the

withdraw representation of THI and THMI and to cease defending against the Jackson Estate's claims in the Florida state court. (Id. at ¶¶ 170-173). In accordance with the Receiver's directive, counsel moved to withdraw on April 29, 2010, and the state court granted the motion on June 4, 2010. (Id. at ¶¶ 171, 174). As of June 25, 2010, after THI and THMI failed to secure new counsel and failed to attend a pretrial conference, the Jackson Estate moved for a default, which the state court granted on July 7, 2010. (Id. at ¶¶ 177-178). The case proceeded to a three day jury trial, and on June 22, 2010, a final judgment in the amount of $110,000,000 was entered against THI and THMI. (Id. at ¶ 179-180). No appeal was taken. (Id. at ¶ 181).

### B. The Jackson Estate's Collection Efforts

The Jackson Estate indicates that the $110,000,000 judgment "was uncollectable against THI and THMI" and characterizes THI and THMI as "empty shells with no assets." (Id. at ¶ 182). The Jackson Estate alleges that Receiver, counsel for the Receiver, as well as a host of other Defendants (including General Electric Capital Corporation; GTCR Fund VI, L.P.; GTCR Golden Rauner, LLC; GTCR Partners VI,

---

same herein.

4

L.P.; Ventas, Inc.; and Ventas Realty, Limited Partnership) "conspired to defeat the plaintiff's claims by liquidating the assets of the former nursing home operators, concealing them in newly created entities, and leaving behind liability-ridden empty shells." (Doc. # 1 at 2).

On April 26, 2013, the Jackson Estate filed the present action seeking damages against all Defendants for violation of civil rights under 42 U.S.C. § 1983 (count 1) and for civil conspiracy under Florida law (count 2).  In addition, the Jackson Estate has filed a host of other actions in state and federal court in an effort to collect on the judgment. See, e.g., Estate of Jackson v. Trans Health Management, Inc., et al., Case No. 8:10-cv-2937-T-33TGW (United States District Court, Middle District of Florida); Estate of Jackson v. Trans Health Management, Inc., et al., Case No. 8:13-cv-2453-T-23TBM (United States District Court, Middle District of Florida); Estate of Jackson v. Trans Health Management, Inc., et al., Case No. 2004-CA-3229 (Circuit Court, Polk County, Florida); Estate of Jackson v. McGraw Hill Companies, Inc., Case No. 8:13-cv-850-T-23MAP (United States District Court, Middle District of Florida).

The Jackson Estate also filed an involuntary chapter 7 bankruptcy petition against Fundamental Long Term Care, Inc.

5

(the 100% owner of THMI's stock) on December 5, 2011, in the United States Bankruptcy Court for the Middle District of Florida. (<u>In re: Fundamental Long Term Care, Inc.</u>, Case No. 8:11-bk-2258-MGW). That case has spawned a number of related adversary proceedings, including among many others Case No. 8:13-ap-893-MGW, which was filed on October 1, 2013.

The Bankruptcy Court entered a "Memorandum Opinion on Proper Forum for Fraudulent Transfer and Alter Ego Claims" on September 12, 2013, ruling that all parties asserting fraudulent transfer and alter ego claims involving THMI should "litigate those claims in one proceeding before [the Bankruptcy] Court" because allowing litigation outside of the Bankruptcy Court to proliferate "creates a very real possibility of inconsistent results." (Case No. 8:12-ap-1198-MGW, Doc. # 65 at 2, 19).[2]

Thereafter, on November 27, 2013, the Bankruptcy Court clarified its September 12, 2013, Opinion by identifying seven pending actions implicating property of the Bankruptcy Estate

---

[2] The Bankruptcy Court also noted that the "issues needed to be hashed out in one proceeding involving all of the parties. And that proceeding can only take place in this Court since the proceeding involves property of the [bankruptcy] estate or the question of whether certain property belongs to the [bankruptcy] estate." (Case No. 8:12-ap-1198-MGW, Doc. # 65 at 21).

6

and enjoining prosecution of those actions. (Case No. 8:11-bk-22258-MGW, Doc. # 1272). The present action, however, was not included in the Bankruptcy Court's injunction. The Court surmises that the Bankruptcy Court's omission of the present action from the injunction was intentional, and this Court will therefore consider the merits of the aforementioned Motion to Dismiss herein.[3]

## II. **The Barton Doctrine**

The Jackson Estate's sprawling 50-page Complaint alleges the Receiver as well as counsel for the Receiver, Tydings & Rosenberg, engaged in conduct designed to hinder, delay, and defeat the Jackson Estate's ability to collect on its aforementioned judgment. As alleged in the Complaint:

> With the assets and liabilities of THMI and THI gone, the conspiracy focused on concealing the details of the massive fraud described above by dumping THI into a state receivership in Maryland. A receivership was chosen so that Defendants could avoid scrutiny while maintaining control. Defendants GECC, Ventas, GTCR, and Tydings conspired with the Maryland Receiver, who was acting under color of state law, to put THI into a receivership to mislead and defraud creditors and avoid liability and debt.

---

[3] To the extent the Ventas Defendants seek a stay of this case based upon the Bankruptcy Court's Orders, the Court denies the stay without prejudice. It seems to this Court that, if the Bankruptcy Court intended to adjudicate the claims presented in this case, it would have included this case in its injunction Order.

7

(Doc. # 1 at ¶¶ 128-129). Among other aspersions cast against the Receiver, the Jackson Estate alleges that the Maryland Receivership was "void," (Id. at ¶ 140), that the Receivership was "designed to prevent creditors from learning of the fraudulent transfers from 2006 to 2009 and the true owners' identities" (Id. at ¶ 144), and that "[t]he continued reliance upon the void Receivership allows THI, the Receiver, Tydings, GECC, Ventas, and others to perpetuate an ongoing fraud on Florida courts, litigants, and creditors, including the plaintiff." (Id. at ¶ 193). The Jackson Estate also characterizes as "unlawful" various agreements that the Maryland Court authorized the Receiver to enter into, such as the January 5, 2012, Joint Venture Agreement. (Id. at ¶ 198).[4]

The Receiver and counsel for the Receiver seek the dismissal of all claims asserted against them pursuant to the Barton Doctrine because the Jackson Estate has not sought permission from the Maryland Court prior to bringing this action. The Court agrees that the doctrine applies with full force to the Receiver and Tydings & Rosenberg.

---

[4] The Jackson Estate specifically alleges that "the Maryland state court had no authority or jurisdiction to approve the transfer of the assets that are located outside of Maryland." (Doc. # 1 at ¶ 208).

8

The Supreme Court in <u>Barton v. Barbour</u>, 104 U.S. 126, 127 (1881), stated that "it is a general rule that before suit is brought against a receiver[,] leave of the court by which he was appointed must be obtained." As stated in <u>Carter v. Rodgers</u>, 220 F.3d 1249, 1252 (11th Cir. 2000), "[a]n unbroken line of cases . . . has imposed this requirement as a matter of federal common law . . . referred to as the '<u>Barton</u> Doctrine.'" (citing <u>In re Linton</u>, 136 F.3d 544, 546 (7th Cir. 1998)). "Where a plaintiff neglects to obtain leave from the appointing court, a suit filed against the receiver in another court must be dismissed for lack of subject matter jurisdiction." <u>Patco Energy Express, LLC v. Lambros</u>, 353 F. App'x 379, 381 (11th Cir. 2009); <u>see</u> <u>also</u> <u>Barton</u>, 104 U.S. at 136-37; <u>Carter</u>, 220 F.3d at 1253. The <u>Barton</u> Doctrine also applies to professionals retained by a receiver, such as Tydings & Rosenberg. <u>See</u> <u>Lawrence v. Goldberg</u>, 573 F.3d 1265, 1270 (11th Cir. 2009).

The Jackson Estate does not dispute that it failed to obtain leave of the Maryland Court prior to bringing this suit. Rather, the Jackson Estate contends that the Complaint alleges "ultra vires" conduct, which precludes application of the <u>Barton</u> Doctrine. The Court's careful review of the voluminous Complaint leads to the conclusion that the ultra

9

vires exception to the Barton Doctrine does not apply here.

The Court has evaluated the Maryland Court's January 8, 2009, Order appointing the Receiver. That Order granted the Receiver "power and authority to take any and all actions necessary to preserve, protect, and liquidate the assets of the THI Entities without further court order" including the "power and authority to take charge of and assume exclusive control of all real and personal property, tangible or intangible assets, operations and business affairs of the THI Entities and all products and proceeds thereof"; "[t]he power and authority to manage and operate the THI Entities' assets and continue or discontinue the operations of the THI Entities in such manner as, in the Receiver's reasonable business judgment, will maximize the proceeds realized by the receivership estate, and to seek the advice and instruction from this Court in connection therewith"; and "[t]he power and authority to manage any and all litigation to which any THI Entity is a party and to manage disputes and other matters involving creditors of the THI Entities." (Doc. # 30-1 at ¶ 4). That Order also authorized the Receiver to employ Tydings & Rosenberg as counsel. (Id. at ¶ 10).

It is apparent to the Court that the Jackson Estate is not satisfied with the manner in which the Maryland Court

appointed the Receiver, the duties the Maryland Court bestowed upon the Receiver, the Receiver's choice of counsel, and the business dealings that the Maryland Court authorized the Receiver to undertake.  However, it does not appear, from the Court's review of the Complaint, that the main thrust of the Complaint concerns conduct that was not authorized by the Maryland Court.  Rather, the Jackson Estate persists in its contention that the Maryland Court lacked jurisdiction to authorize the Receiver's conduct as catalogued in the Complaint.  However, that is not the same as alleging that the Receiver engaged in conduct outside the scope of the Order in which the Receiver was appointed.

Notably, even if the Court were to identify an allegation in the Complaint that the Receiver exceeded his circumscribed authority, such an allegation would not undermine this Court's determination that the <u>Barton</u> Doctrine applies here.  It cannot be reasonably disputed that the Jackson Estate's Complaint seeks relief against the Receiver and the Receiver's counsel based on duties undertaken at the direction of the Maryland Court and with that Court's approval.  If other ultra vires conduct is alleged in the Complaint, those allegations do not insulate this case from the Supreme Court's directive

as enunciated in <u>Barton</u>.[5]

The Jackson Estate has not persuaded the Court that its Complaint against the Receiver and counsel for the Receiver escapes application of the <u>Barton</u> Doctrine due to the ultra vires exception or otherwise.[6] The Court accordingly dismisses all claims against Sandnes, Grochal, and Tydings & Rosenberg for lack of jurisdiction. The Court acknowledges that these Defendants have raised other arguments in their Motion to Dismiss, such as the contention that the Complaint fails to state a claim under Rule 12(b)(6), Fed. R. Civ. P. However, because the Court determines that it lacks jurisdiction over the Receiver and counsel for the Receiver, the Court will not, at this time, evaluate these Defendants' alternative arguments.

---

[5] The <u>Barton</u> Doctrine applies with greatest force in cases such as this one, in which the Receiver was appointed by a state court and sued in a federal court. In <u>Barton</u> itself, in fact, the receiver was appointed by a state court and sued in a federal court. The Supreme Court applied the <u>Barton</u> doctrine in <u>Porter v. Sabin</u>, 149 U.S. 473, 479 (1893), another case in which a state court receiver was sued in federal court and noted: "the reasons are yet stronger for not allowing a suit against a receiver appointed by a state court to be maintained . . . by a court of the United States, deriving its authority from another government, though exercising jurisdiction over the same territory." <u>Id.</u>

[6] Notably, the THI Entities sought an Order vacating the Receivership in the Maryland Court, which that Court denied in a detailed Order dated November 18, 2011. (Doc. # 30-2).

### III. Motion to Stay

The Court has already determined that it is not necessary to stay this action based on the Bankruptcy Court's Orders because the Bankruptcy Court did not include the present action in its injunction Order.[7] The Court will now take the opportunity to address the Ventas Defendants' contention that this case should be stayed due to the application of the Barton Doctrine.

As noted, the Court has dismissed the Receiver and counsel for the Receiver based on the Jackson Estate's failure to seek permission from the Maryland Court prior to bringing claims against these Court appointed Defendants. However, the Court determines that it is not required to stay the action as to the remaining Defendants based on its lack of jurisdiction over the Receiver and counsel for the Receiver. The Court agrees in principal with the Ventas Defendants' suggestion that "[i]t is not yet known whether . . . the Estate of Jackson will be seeking such leave from the Maryland state

---

[7] The Court recognizes that the Bankruptcy case is complex and ever-evolving. In the instance that further Orders of that Court impact these proceedings, the parties should so advise this Court. Furthermore, the Court notes that the denial of the Motion to Stay herein is without prejudice, leaving open for the parties the opportunity to reassert any request that this matter be stayed on appropriate terms.

13

court, or, if they do, how that court will answer." (Doc. # 68). However, this uncertainty does not, in itself, warrant a stay of the proceedings.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants Alan M. Grochal and Tydings & Rosenberg LLP's Motion to Dismiss (Doc. # 30) is **GRANTED.**

(2) The claims asserted against Defendants Alan M. Grochal, Tydings & Rosenberg LLP, and Michael Sandnes are dismissed for lack of jurisdiction.

(3) Ventas, Inc. and Ventas Realty, Limited Partnership's Motion to Stay Proceedings and/or Discovery (Doc. # 68) is **DENIED WITHOUT PREJUDICE.**

**DONE** and **ORDERED** in Tampa, Florida, this 3rd day of February, 2014.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: All Parties and Counsel of Record

14