```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                     TAMPA DIVISION

THE ESTATE OF JUANITA AMELIA
JACKSON, by and through CATHY
JACKSON-PLATTS, Personal
Representative,

       Plaintiff,
v.                                  Case No. 8:13-cv-1133-T-33MAP

MICHAEL SANDNES, as Court
Appointed Receiver for Trans
Healthcare, Inc.; ALAN M.
GROCHAL, as Court Appointed
Receiver for Trans Healthcare,
Inc.; TYDINGS & ROSENBERG, LLC;
GENERAL ELECTRIC CAPITAL
CORPORATION; GTCR GOLDER
RAUNER, LLC; GTCR FUND VI,
L.P.; GTCR PARTNERS VI, L.P.;
VENTAS REALTY, LIMITED
PARTNERSHIP; and VENTAS, INC.,

       Defendants.
_____/
```

**ORDER**

This matter comes before the Court pursuant to Defendants GTCR Fund VI, L.P.; GTCR Golden Rauner, LLC; and GTCR Partners VI, L.P.'s Motion to Dismiss (Doc. # 32), filed on June 19, 2013, to which the Jackson Estate responded on July 1, 2013 (Doc. # 36), and to which the GTCR Defendants replied on July 19, 2013. (Doc. # 46). Defendants Ventas, Inc. and Ventas Realty, Limited Partnership joined in the Motion on August 26, 2013 (Doc. # 56), and the Jackson Estate responded to the Ventas Defendants' joinder in the Motion on September 9, 2013.

(Doc. # 60).  As explained in more detail below, the Court grants the Motion.

I. **Background**

   A. **The $110,000,000 Judgment**

Juanita Amelia Jackson was a nursing home resident at Auburndale Oaks Healthcare Center in Polk County, Florida from August 23, 2002, through December 1, 2002, and again on March 27, 2003, until May 30, 2003. (Doc. # 1 at ¶ 5). Non-parties Trans Healthcare, Inc. ("THI") and Trans Health Management, Inc. ("THMI") operated and managed the nursing home during Jackson's residency. (Id.). Jackson suffered from abuse and neglect at the nursing home and died. (Id. at 1).

On July 30, 2004, the Jackson Estate filed suit against THI and THMI in the Circuit Court for Polk County, Florida for personal injuries and wrongful death resulting from abuse and neglect during Jackson's nursing home residency. (Id. at ¶ 38). "At the time the Jackson Estate filed its claim against THI and THMI, these combined, vertically integrated companies were the largest private nursing home management chain in America, with revenues of over a billion dollars." (Id. at ¶ 39). However, in February of 2006, "the stock of THMI was allegedly sold to a company with the name Fundamental Long Term Care, Inc. for the discounted sum of $100,000." (Id. at

2

¶ 90). As for THI, as a result of "unlawful and wrongful transfers in 2006, THI was left with only a small group of unprofitable subsidiaries and property, which were gradually sold off." (Id. at ¶ 114).

On January 8, 2009, a Maryland state court appointed Michael Sandnes as Receiver of THI and authorized Sandnes to employ Tydings & Rosenberg as counsel for the Receiver. (Id. at ¶¶ 134-137). Thereafter, on July 27, 2010, Alan Grochal, Esq. was appointed as a substitute Receiver for THI. (Id. at ¶ 138).[1] The Receiver directed counsel for THI and THMI to withdraw representation of THI and THMI and to cease defending against the Jackson Estate's claims in the Florida state court. (Id. at ¶¶ 170-173). In accordance with the Receiver's directive, counsel moved to withdraw on April 29, 2010, and the state court granted the motion on June 4, 2010. (Id. at ¶¶ 171, 174). As of June 25, 2010, after THI and THMI failed to secure new counsel and failed to attend a pretrial conference, the Jackson Estate moved for a default, which the state court granted on July 7, 2010. (Id. at ¶¶ 177-178). The case proceeded to a three day jury trial, and on June 22, 2010, a

---

[1] In the Complaint, the Jackson Estate refers to both Sandnes and Grochal as "the Receiver." The Court will do the same herein.

3

final judgment in the amount of $110,000,000 was entered against THI and THMI. (Id. at ¶¶ 179-180). No appeal was taken. (Id. at ¶ 181).

### B. The Jackson Estate's Present Collection Effort

The Jackson Estate indicates that the $110,000,000 judgment "was uncollectable against THI and THMI" and characterizes THI and THMI as "empty shells with no assets." (Id. at ¶ 182). Thus, the Jackson Estate has cast a wide net in its efforts to redeem its judgment.[2]

On April 26, 2013, the Jackson Estate filed the present action seeking damages against all Defendants for violation of civil rights under 42 U.S.C. § 1983 (count 1) and for civil conspiracy under Florida law (count 2). The basis of the

---

[2] See, e.g., Estate of Jackson v. Trans Health Mgmt., Inc., et al., Case No. 8:10-cv-2937-T-33TGW (United States District Court, Middle District of Florida); Estate of Jackson v. Trans Health Mgmt., Inc., et al., Case No. 8:13-cv-2453-T-23TBM (United States District Court, Middle District of Florida); Estate of Jackson v. Trans Health Mgmt., Inc., et al., Case No. 2004-CA-3229 (Circuit Court, Polk County, Florida); Estate of Jackson v. McGraw Hill Companies, Inc., Case No. 8:13-cv-850-T-23MAP (United States District Court, Middle District of Florida). The Jackson Estate also filed an involuntary chapter 7 bankruptcy petition against Fundamental Long Term Care, Inc. (the 100% owner of THMI's stock) on December 5, 2011, in the United States Bankruptcy Court for the Middle District of Florida. (In re: Fundamental Long Term Care, Inc., Case No. 8:11-bk-2258-MGW). That case has spawned a number of related adversary proceedings, including among many others Case No. 8:13-ap-893-MGW, which was filed on October 1, 2013.

4

Complaint is that the Receiver, counsel for the Receiver (Tydings & Rosenberg), as well as a host of other Defendants (including General Electric Capital Corporation; GTCR Fund VI, L.P.; GTCR Golden Rauner, LLC; GTCR Partners VI, L.P.; Ventas, Inc.; and Ventas Realty, Limited Partnership) "conspired to defeat the Plaintiff's claims by liquidating the assets of the former nursing home operators, concealing them in newly created entities, and leaving behind liability-ridden empty shells." (Doc. # 1 at 2).

The Complaint details a very intricate scheme in which the Receiver, allegedly joined by the private Defendants, looted the THI entities and then set forth on a massive litigation campaign designed to frustrate the Jackson Estate's judgment collection efforts. The Jackson Estate specifically contends that Defendants' actions "have violated Plaintiff's rights to due process of law guaranteed by the Constitution of the United States under the Fourteenth Amendment, the Privileges and Immunities Clause of Article VI, and the Equal Protection Clause as applied through the Fourteenth Amendment." (Id. at ¶ 280).

At this juncture, the GTCR Defendants seek dismissal of the Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P.

5

## II. Rule 12(b)(6) Legal Standard

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In accordance with Twombly, Federal Rule of Civil Procedure 8(a) calls for "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009)(quoting Twombly, 550 U.S. at 570). A plausible claim for relief must include "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. Analysis

Section 1983, the basis of this Court's jurisdiction, provides a cause of action for damages against any person who, under color of state law, deprives another person of any "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. In the Complaint, the Jackson Estate asserts its § 1983 claim against all Defendants. This Court has dismissed the Receiver and Counsel for the Receiver for lack of jurisdiction under the Barton Doctrine (Doc. # 30). Accordingly, the Jackson Estate's sole federal claim can survive only if the Complaint allegations plausibly support that one or more of the remaining Defendants (all private actors) was a state actor.

"[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1277 (11th Cir. 2003). Private parties can be deemed state actors for § 1983 purposes

7

"only in rare circumstances." Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992). For the private Defendants to be deemed state actors in this case, one of the following conditions must be met:

> (1) The State coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise ("nexus/joint action test").

Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001). The Jackson Estate argues that the Complaint satisfies the nexus/joint action test. The Court disagrees.

### A. Temporal Relationships

Identifying any allegations tending to show that the private Defendants were joint participants with the Maryland Receiver and counsel for the Receiver is no easy task for a number of reasons. While some of the Jackson Estate's allegations are tethered to reality via temporal references, many are not. Those Complaint allegations to which the Jackson Estate has ascribed a temporal reference appear to predate both the Receiver's appointment, which occurred on January 8, 2009, and the entry of the judgment, which occurred

8

on June 22, 2010. For example, pages 10 through 24 of the Complaint, under the heading "Statement of Operative Facts," weave a complex tale involving illegal campaign contributions, Medicare fraud, fraudulent financial statements by THI, and other "rumors of fraud" transpiring between 2004 and 2008. (Doc. # 1 at ¶¶ 38-133). Plainly, any allegations describing conduct by the private Defendants prior to the appointment of the Receiver cannot constitute state action for § 1983 purposes.

In addition, the crux of the Jackson Estate's claim is that the Defendants conspired to prevent collection of the June 22, 2010, judgment: "to date, nearly three years after its entry, the Plaintiff has yet to collect the final judgment." (Id. at ¶ 283). The Jackson Estate alleges a "constitutionally protected property" interest by virtue of "the final judgment" in the underlying wrongful death action. (Id. at ¶ 269). Prior to the entry of that judgment, however, the Jackson Estate had a mere "expectation" which cannot support a § 1983 action. See Bd. of Regents v. Roth, 408 U.S. 564, 576 (1972)(property interests under the Constitution are "interests that a person has already acquired"); Adams v. Bainbridge-Decatur Cnty. Hosp. Auth., 888 F.2d 1356, 1363 (11th Cir. 1989)(Fourteenth Amendment property interest

9

requires "more than a unilateral expectation; the individual must possess a legitimate claim of entitlement."). Thus, any Complaint allegations predating entry of the judgment would also have little, if any relevance to the § 1983 claim.[3]

As noted, much of the Complaint is devoted to describing nefarious events that transpired years prior to both the Receiver's appointment and the entry of the $110,000,000 judgment. This leaves the Court at a great disadvantage in its quest to identify relevant "state action" by the remaining private party Defendants. The fact that the Complaint often lumps all Defendants together and does not set forth separate and specific allegations regarding each individual Defendants' alleged participation in the purported scheme to harm the Jackson Estate makes the Court's task that much more difficult.

Beginning at Complaint paragraph 143, the Jackson Estate alleges that "the Defendants designed the Receivership" to "avoid bankruptcy" proceedings, "mislead creditors", and "buy time." (Doc. # 1 at ¶¶ 143-145, 151). The Complaint also describes with great detail the litigation conduct undertaken

---

[3] If the Jackson Estate is claiming an injury that extends beyond collection of the judgment, it is not apparent to the Court.

by the Receiver with the allegedly unfair result of rendering the Jackson Estate's judgment an uncollectible one, including entering into a settlement agreement and seeking the Maryland Court's approval of the same. (Id. at ¶¶ 198-199). The Complaint further alleges:

> The Receiver, Tydings, GECC, GTCR, and Ventas conspired to seize the assets of former nursing home operators, conceal them in newly created entities, and leave behind empty shells to defraud their Florida creditors, including Plaintiff.
>
> As part of the conspiracy, the Receiver and GECC colluded to place THI into an invalid Maryland state court receivership for the specific purpose of avoiding payment to the creditors of THI, including the Plaintiff, without due process of law.
>
> While acting under color of law and misusing established Maryland state court procedure, the Receiver diverted the assets of THI to other insiders, including Tydings, GECC, GTCR, and Ventas, thereby dissipating Plaintiff's property rights without due process of law.
>
> The Receivership did not make any payments to the creditors of THI, including vendors.
>
> The only payments made by the Receivership were to Defendants and co-conspirators, GECC, the Receiver, and Tydings.
>
> Such payments were unlawful and in furtherance of the conspiracy.
>
> With the Receivership, the Receiver, Tydings, GECC, Ventas, and GTCR were able to keep millions of dollars worth of assets they had fraudulently received and avoided any liability to creditors like the Plaintiff.

(Id. at ¶¶ 249-255). As noted, these accusations are unanchored by allegations of time and place, rendering the Court's mission of identifying relevant "state action" impossible.[4]

The Court observes that the Jackson Estate pursued similar claims in Jackson-Platts v. Mcgraw-Hill Companies, No. 8:13-cv-850-T-23MAP. Among other allegations, the Jackson Estate contended that "[Rubin] Schron, along with GTCR Golden Rauner, LLC, GTCR Fund VI, L.P., GTCR Partners VI, L.P. (collectively 'GTCR'), General Electric Capital Construction ('GECC'), Ventas Realty, L.P., and Ventas, Inc. (collectively 'Ventas'), conspired for their own self-interest, to loot the assets of nursing homes to the direct detriment of nursing home residents, including the Jackson Estate." (Id. at Doc. # 1, ¶ 3). There, in dismissing the complaint with leave to amend, the court noted:

> [T]he complaint is a confusing, ambiguous, generalized, conclusory, uninformative (and intermittently melodramatic) paper. The complaint

---

[4] In addition, general allegations, such as the allegation that General Electric Capital, the GTCR Defendants, and the Ventas Defendants "knowingly and intentionally conspired and participated with the Receiver acting under color of state law to deprive Plaintiff's federally protected constitutional rights" (Doc. # 1 at ¶¶ 14, 26, 32) are nothing more than legal conclusions masquerading as factual allegations, and do not support "joint action."

> requires considerable energy to read with patience and to attempt to understand with confidence. Although alleging an encompassing, malevolent, and predatory scheme, the complaint provides to the disinterested reader little or nothing on which to conclude that the allegations arise from a sound factual basis or, more to the point, that the pleader has even the least notion that the allegations arise from a sound factual basis. The constant attribution of acts to "the Defendants" and "the Co-Conspirators" disguises much information necessary to glean the meaning, if any, of the allegations. The almost entire absence of allegations of time, place, and manner and the pertinent absence of the identity of the particular actors is wholly disabling to the disinterested reader. These omissions are so impairing and so obvious that the disinterested reader tends to doubt their inadvertence.

(<u>Id.</u> Doc. # 43 at 9-10). The Jackson Estate's present Complaint suffers from many of the same infirmities. As articulated in more detail below, the Court grants the Jackson Estate the opportunity to file an amended complaint to cure the deficiencies, if it chooses to do so.

**B. Litigation Privilege**

In addition, it appears to this Court that much of the conduct alleged in the Complaint is privileged litigation conduct, and thus could not provide a foundation for a § 1983 action. "The Supreme Court of Florida . . . has stated 'the litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin. Absolute

13

immunity must be afforded to any act occurring during the course of a judicial proceeding so long as the act has some relation to the proceedings." Gaisser v. Portfolio Recovery Assocs., LLC, 571 F. Supp. 2d 1273, 1279-80 (S.D. Fla. 2008)(quoting Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So. 2d 380, 384 (Fla. 2007)).[5]

Federal law provides a similar protection. The First Amendment to the United States Constitution guarantees the right to "petition the Government for a redress of grievances." U.S. Const. Amend. I.  As explained in Atico International U.S.A. v. Luv N' Care, Limited., No. 09-60397, 2009 U.S. Dist. LEXIS 73540, at *7 (S.D. Fla. Aug. 19, 2009), "a form of litigation immunity akin to the immunity provided by the Noerr-Pennington doctrine applies to non-antitrust cases . . . Thus, a complaint that alleges only pre-litigative and litigative activities cannot state a cause of action." See also Campbell v. PMI Food Equip. Group, Inc., 509 F.3d 776, 790 (6th Cir. 2007)("Although the Noerr-Pennington doctrine was initially recognized in the antitrust field, the federal courts have by analogy applied it to claims brought

---

[5] "Maryland applies the rule of *lex loci delicti* in tort cases, that is the law of the state where the harm occurred." Yang v. Lee, 163 F. Supp. 2d 554, 561 (D. Md. 2001).

14

under both state and federal laws.").[6]

The Court tends to agree with Defendants that litigation conduct (such as petitioning the Maryland Court for a receivership, settling claims and seeking Court approval of such settlement, and filing and defending against litigation in state and federal court, etc.) is immune conduct and cannot be relied upon by the Jackson Estate to constitute "state action" in violation of a federal right.

## IV. Conclusion

The Court grants the Motion to Dismiss because the Jackson Estate's sole federal claim, and the basis of this Court's jurisdiction, fails to contain pertinent allegations which state a claim entitling the Jackson Estate to relief. In the interests of fairness, however, the Court will allow the Jackson Estate the opportunity to file an amended complaint on or before February 14, 2014, if it so chooses, in accordance with the foregoing analysis.

Accordingly, it is hereby

---

[6] See E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961)(granting antitrust immunity for publicity campaign designed to spur the adoption of monopoly-facilitating legislation); United Mine Workers v. Pennington, 381 U.S. 657, 670 (1965)(noting that Noerr shielded a defendant from antitrust liability for "efforts to influence public officials even though intended to eliminate competition.").

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants GTCR Fund VI, L.P.; GTCR Golden Rauner, LLC; and GTCR Partners VI, L.P.'s Motion to Dismiss (Doc. # 32) is **GRANTED**.

(2) The Complaint is dismissed without prejudice and with leave to amend by February 14, 2014, if the Jackson Estate so chooses.

**DONE** and **ORDERED** in Tampa, Florida, this 3rd day of February, 2014.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to:   All Parties and Counsel of Record

16